UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHARENNA CARTHANS, as Special Administrator of the Estate of JEREMY ISAIAH HILL, SR., deceased, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| CITY OF HARVEY, a municipal corporation, DENARD EAVES, THOMAS OSTROWSKI #977, JULIO ESPARZA #943, JAMES SINNOTT #960, SHANE GORDON #906, S. KELLEY #973, ROBERT ADAMS #690, CAMERON FORBES, STEVEN PRYOR #4876, JEFF CROCKER #602, LIONEL SMITH, STEVEN PORTER, FREDERICK WASHINGTON #940, LOUAY SALEH #1017, CHARLES COLE #1015, RICHARD JONES, LEMUEL ASKEW, ROY WELLS, LINDA SIMPKINS #703, JOHN DOE and MICHAEL DOE (unidentified police officers), | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

Case No. 14 cv 5094

Judge Sharon Johnson Coleman

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sharenna Carthans, as Special Administrator of the Estate of Jeremy Isaiah Hill, Sr., deceased, filed a seven-Count Second Amended Complaint, alleging excessive force under 42 U.S.C. § 1983, wrongful death and survival, against the officer defendants, the City of Harvey, and Acting Police Chief Denard Eaves. The Second Amended Complaint also asserts a claim of municipal liability against the City of Harvey. The City of Harvey and police officers Eaves, Ostrowski, Esparza, Sinnott, Gordon, Adams, Forbes, Porter, Pryor, Crocker, Washington, Wells, Simpkins, and the Does (collectively "the Harvey defendants") move for summary judgment pursuant to Federal Rule of Civil Procedure 56 on all claims [144]. Separately, the defendant officers Kelley, Smith, Saleh, Cole, Askew, and Jones, also move for summary judgment on all claims [147]. For the

1

reasons set forth below, the Court grants in part and denies the Harvey defendants' motion and grants the other officers' motion.

**Background**

The following facts are undisputed. Sharenna Carthans brings this law suit as the Special Administrator of the Estate of Jeremy Isaiah Hill, Sr., who is deceased. Jeremy Hill was a 27 year old African-American man, who was 5'6" and 232 pounds when he died. Defendants are the City of Harvey, Acting Chief of the Harvey Police Department Denard Eaves, and Harvey Police Officers Thomas Ostrowski, Julio Esparza, James Sinnott, Shane Gordon, Steven Kelley, Robert Adams, Cameron Forbes, Steven Pryor, Jeff Crocker, Lionel Smith, Steven Porter, Frederick Washington, Louay Saleh, Charles Cole, Richard Jones, Lemuel Askew, Roy Wells, and Linda Simpkins.

In the late afternoon daylight, on June 25, 2013, Detective Esparza and Detective Ostrowski observed Hill driving his car at the intersection of 152nd Street and Marshfield Avenue in Harvey, Illinois. Hill disobeyed the stop sign and Esparza and Ostrowski activated their vehicle lights. (Dkt. 154, Plaintiff's Resp. to Def.'s L.R. 56.1(a) Statement of Undisputed Material Facts, at ¶ 7). Hill pulled over briefly, Esparza and Ostrowski exited their vehicle, and Hill sped off. (*Id.* at ¶ 8). At some point, Hill stopped his car and fled on foot with Esparza chasing after him. (*Id.* at ¶ 9). The foot chase lasted a couple of minutes and ended in a wooded area where Esparza found Hill lying down. (Dkt. 153, Plaintiff's Resp. to Def.'s L.R. 56.1(a) Statement of Undisputed Material Facts, at ¶ 7). The Police Report indicated that Hill fell several times during the foot chase. (*Id.* at ¶ 43). Ostrowski stayed in the vehicle during the foot chase. (*Id.* at ¶ 12). It is undisputed that Esparza did not draw his weapon, but plaintiff asserts that he may have drawn his asp because there is medical evidence that Hill may have been struck with a baton or similar instrument. (*Id.* at ¶ 8). Both Esparza and Hill were breathing hard and sweating. (*Id.* at ¶ 9). Esparza and Ostrowski arrested Hill in the

2

area of 147th and Spaulding at approximately 1735 hours (5:35 p.m.) on June 25, 2013. (Dkt. 154 at ¶ 10). Ostrowski waited for the tow truck to arrive at the scene for Hill's car. (Dkt. 153 at ¶ 14).

Officer Charles Cole and Officer Steven Kelley were on patrol in their squad car on June 25, 2013, when they heard a dispatch to respond to a chase that was in progress. (*Id.* at ¶¶ 11-12). When Cole and Kelley arrived at the location of the dispatch call, Esparza was bringing Hill out of a wooded area in handcuffs. (*Id.* at ¶ 14). Hill was breathing heavily. (*Id.* at ¶ 15). Neither Cole nor Kelley participated in the foot chase. (*Id.* at ¶ 16). Esparza turned the handcuffed Hill over to Cole, who took Hill by one of his arms. (*Id.* at ¶¶ 17, 19). Kelley performed a pat down search of Hill and did not recover any weapons or contraband. (*Id.* at ¶ 24). Hill did not resist while in Kelley and Cole's custody. (*Id.* at ¶ 27). Kelley and Cole had custody of Hill for approximately three to five minutes before turning him over to Officer Robert Adams and Officer Louay Saleh, and returning to the Harvey Police Station. (*Id.* at ¶¶ 26, 28). Kelley and Cole returned to the Harvey Police Station and went to the booking area, but did not assist with taking Hill to booking. (*Id.* at ¶ 34).

Officer Robert Adams and Officer Louay Saleh arrived at the scene after Kelley and Cole. (*Id.* at ¶ 16). They were responding to a call for an assist to transport an individual in custody to the Harvey Police Department. (*Id.* at ¶ 61). Adams and Saleh took custody of Hill and placed him in the back of their squad car for transport to the Harvey Police Station. (*Id.* at ¶¶ 30-31). Saleh searched Hill before placing him in the back of the squad car. (*Id.* at ¶ 62). While en route to the police station, Adams asked Hill for his information for an inquiry in LEADs via the in-car computer. (*Id.* at ¶ 64). Hill was not aggressive or verbally abusive during the ride to the station. (*Id.* at ¶ 66). Adams and Saleh parked in the salley port of the Harvey Police Station. (*Id.* at ¶ 33). Saleh struggled with escorting Hill into the station. Hill was cooperative, but fell to the ground. (*Id.* at ¶ 67).

In the booking area at the Harvey Police Station, Hill was seated and handcuffed to a bench. (*Id.* at ¶ 36). Hill had trouble breathing. (*Id.* at ¶ 37). At no point while in booking did Hill become combative. (*Id.* at ¶ 38). Kelley performed a custodial search on Hill in booking, but did not find any drugs or weapons. (*Id.* at ¶ 39). Kelley gave Hill water two or three times while in booking. (*Id.* at ¶ 40). Cole also searched Hill in booking. (*Id.* at ¶ 41). Saleh observed Kelley and Cole search Hill and then went to the booking division desk to complete Hill's arrest cards. (*Id.* at ¶ 69).

Booking Officer Frederick Washington testified that Hill was sweating and breathing heavily when the officers brought Hill into the booking room, and that Officer Jones notified the sergeant.[1] (Dkt. 153 at ¶ 21). Washington also testified that he checked on Hill every two or three minutes to monitor his breathing because Hill said he could not breathe. (*Id.* at ¶¶ 21-22). Jones also testified that Hill was checked every two or three minutes and he continued to breathe heavily. (*Id.* at ¶ 23). Jones did not recall Hill requesting medical attention. (*Id.* at ¶ 24). When Jones noticed Hill slumping over, she notified the Sergeant so that an ambulance could be called. (*Id.* at ¶ 25). Bud's Ambulance arrived and attempted to resuscitate Hill, who was not breathing. (*Id.*). Jones was present when the ambulance arrived and watched the paramedics place paddles on Hill's chest. (*Id.* at ¶ 26). She did not see any evidence that he had been hit or struck on the chest. (*Id.*). The EMT with Bud's Ambulance, Jennifer McCann, also testified that she did not recall whether she saw any evidence of physical trauma on Hill. (*Id.* at ¶ 65). McCann further testified that she could not opine as to the reason why Hill's heart was asystole.[2] (*Id.* at ¶ 66). Kelley left the booking room before the paramedics arrived, but Cole remained in the booking area until paramedics arrived. (Dkt. 154 at ¶¶ 41, 42). Kelley and Cole went back on patrol after the paramedics arrived. (*Id.* at ¶ 43).

---

[1] Officer Richard Jones is named in the complaint, but it is undisputed that Richard Jones was on medical leave that day. (Dkt. 154 at ¶¶ 47-48). Officer Domonique Jones gave a deposition in this case. While it appears she is the Officer Jones that plaintiff intended to name, she is not named in the complaint and plaintiff has not provided a basis for naming her as a defendant at this juncture.

[2] Asystole is a "dire form of cardiac arrest in which the heart stops beating and there is no electrical activity in the heart. As a result, the heart is at a total standstill." http://www.medicinenet.com/script/main/art.asp?articlekey=26020 (last checked 5/18/2017).

Dr. Joshi examined Hill upon his arrival at hospital. He testified that he received information from police and the EMT that Hill's heart was asystole prior to Hill's arrival at hospital. (Dkt. 153 at ¶ 67). Dr. Joshi also testified that he did not notice any scratches, bruising, bleeding or anything on Hill's chest near his heart and that none of the abrasions he observed was life threatening. (*Id.* at ¶ 68). Dr. Ponni Arunkumar performed the initial autopsy and was unable to determine a cause of death. (*Id.* at ¶ 69). She testified that she could not rule out blunt force trauma as the cause of death. (*Id.*). Dr. Arunkumar also testified that heart arrhythmia can be caused by physical exertion, including a recent police chase. (*Id.* at ¶ 71).

Chief Denard Eaves has been the Acting Chief of the Harvey Police Department since 2007. (Dkt. 153 at ¶ 57). He testified that he was not on duty the night that Hill died. (*Id.* at ¶ 58). He also testified that his officers are not medically trained paramedics and that when a death occurs in custody it is automatically investigated by an independent agency. (*Id.* at ¶¶ 62, 63).

**Legal Standard**

Summary judgment is proper when "the admissible evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *McGreal v. Vill. of Orland Park*, 850 F.3d 308, 312 (7th Cir. 2017), *reh'g denied* (Mar. 27, 2017) (quoting *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014)); Fed. R. Civ. P. 56(a). In deciding whether summary judgment is appropriate, this Court accepts the nonmoving party's evidence as true and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

**Discussion**

As an initial matter, plaintiff voluntarily dismisses her claims against James Sinnott, Steven Pryor, Jeff Crocker, Steven Porter, Roy Wells, and Lionel Smith. (Dkt. 151 at 6; Dkt. 156 at 2). Plaintiff also acknowledges that Richard Jones and Lemuel Askew are improperly named as

defendants. (Dkt. 156 at 2). She seeks leave to substitute Domonique Jones and Rajshid Askew as parties, but does not set forth the allegations against them or seek leave to file an amended complaint. Accordingly, this Court declines to simply substitute Domonique Jones and Rajshid Askew as defendants.

This Court also dismisses the following defendants because there is no evidence in the record of any role in the arrest and death of Mr. Hill. "Section 1983 creates a cause of action based on personal liability and predicated upon fault. An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.... A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (quoting *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *see also Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010). Thomas Ostrowski responded to the call with Officer Julio Esparza, but it is undisputed that he remained in the squad car while Esparza pursued Hill on foot and remained with Hill's vehicle to await a tow truck. *See* Dkt. 153 at ¶¶ 13, 14. Thus, it is undisputed that Ostrowski had no contact with Hill either at the scene or at the station for booking. It is also undisputed that Shane Gordon and Linda Simpkins were not present and have no knowledge of the incident. *See* Dkt. 153 at ¶¶ 36-40. This Court will also dismiss Cameron Forbes, who is not mentioned anywhere in the briefs or the parties' Local Rule 56.1 statements of fact. Lastly, this Court dismisses the two Doe defendants because they have not been identified and there is no evidence that any additional unnamed officers were involved in the events in question.

*1. Excessive Force*

Defendants argue that there is no genuine issue of material fact on the issue of excessive force by the remaining individual officers: Julio Esparza, Steven Kelley, Charles Cole, Robert Adams, Louay Saleh, and Frederick Washington. "Excessive-force claims in the context of an arrest

are reviewed under the Fourth Amendment's objective-reasonableness standard." *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861 (7th Cir. 2010) (citing *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)); *Abdullahi v. City of Madison,* 423 F.3d 763, 768 (7th Cir. 2005)). Courts look at the totality of the circumstances, taking into account "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865. The reasonableness of a law enforcement officer's actions is evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396, 109 S.Ct. 1865.

Here, Officer Esparza and his partner tried to pull Hill over for disobeying a stop sign, there is no evidence that Hill was armed, but he did lead Esparza on a chase first by car and then on foot. There is credible medical evidence in the record that Hill may have been subject to a degree of force. Dr. Arunkumar testified that she could not rule out defensive wounds from the evidence of injury to Hill's left forearm, left lateral wrist, left knee, left anterior palm, left posterior hand, abdomen, right shoulder, right upper arm, right forearm and right wrist. (Dkt. 145-20, Def. Ex. T at p. 29, ln 3 – p. 31, ln 13, p. 41, ln 21 – p. 42, ln 14). She also testified that the subcutaneous bruising on Hill's right anterior forearm and right posterior forearm was caused by blunt force trauma and could have been defensive wounds. *Id.* at p. 43 ln 7-23. Dr. Arunkumar also noted in her testimony "a patterned linear abrasion, meaning that it seems to coincide with the shape of a rod or linear object that was used. It has the characteristics of parallel lines which we sometimes refer to as tram track appearances." *Id.* at p. 31 ln 24 – p. 32 ln. 4. She testified that blunt force causes abrasions; "possibly a rod shaped structure or a stick." *Id.* at p. 32 ln 11-14. Plaintiff retained former Cook County

Medical Examiner, Dr. James A. Filkins as a medical expert.[3] Although he was not deposed, in his report he opined that the patterned linear abrasions on Hill's abdomen identified by Dr. Arunkumar depict a wound consistent with a "night-stick" injury from an object like a baton, asp, pipe, or pool cue. (Dkt. 153-1 at 5). He further opined that the trauma and pain to the abdomen would be sufficient to cause arrhythmia leading to cardiac arrest. (*Id.*) Dr. Filkins also noted Hill's obesity and exertion from the chase. (*Id.*) Dr. Filkins' concludes that in his opinion "to a reasonable degree of medical and pathological certainty that one of the contributing factors to Hill's death was the trauma inflicted to his torso as evidenced by the wounds on his abdomen which more likely than not caused an arrhythmia leading to Hill's death." (*Id.*)

However, there is scant evidence in the record of which named defendant may have inflicted any wound. There is no evidence that Washington, the booking officer, did anything other than monitor Hill's breathing once he arrived at booking. Thus, this Court finds no genuine issue of fact for a jury with respect to Washington's use of force. It is similarly speculative to conclude that Steven Kelley, Charles Cole, Robert Adams, or Louay Saleh used any force to subdue Hill. Although the record indicates that Hill was in their custody and they would have had an opportunity to injure Hill, the undisputed facts present nothing to suggest that any those officers used an asp or baton at any point while Hill was in their custody. None of those defendants were ever alone with Hill and there is no factual evidence that these officers conspired to conceal their use of force in this instance. A plaintiff cannot rely solely on the occurrence of an in custody injury to create a triable issue of fact, but must identify the specific unreasonable conduct that caused his or her injuries.

---

[3] In their reply briefs, defendants object to the Court considering the opinions of Ken Katsaris, plaintiff's "police misconduct liability expert." However, they do not address Dr. Filkins' opinions at all. While this Court agrees with defendants that Katsaris does not appear to be qualified to give medical opinions, by raising their objection only in their reply briefs defendants have waived the argument for purposes of summary judgment. *See Peterson v. Vill. of Downers Grove*, 103 F. Supp. 3d 918, 925 (N.D. Ill. 2015) (Chang, J.) ("Arguments raised for the first time in reply briefs are ordinarily waived, and rightly so given the lack of opportunity for the other party to respond to them.").

*Abdullahi*, 423 F.3d at 770-71. Accordingly, the Court grants summary judgment on the excessive force claim in favor of defendants Kelley, Cole, Adams, and Saleh.

Only Esparza, who pursued Hill on foot and apprehended him, was ever alone with Hill. His partner, Ostrowski, testified that when he asked Esparza about whether he hit Hill, he said "no, not really." (Dkt. 145-4, Def. Ex. D at p. 120 ln 6-11). As the Court has noted, plaintiff's proffered police misconduct expert cannot opine on medical issues, however, his testimony is relevant to the reasonableness inquiry. *Abdullahi*, 423 F.3d at 772 (allowing that a plaintiff's expert's opinions that the officer's tactics violated standard police practices may be deemed relevant to the reasonableness inquiry). Only Esparza knows what transpired during the foot chase. Courts are particularly careful when reviewing summary judgment motions where the defendant-officer is the only living witness to the occurrence. *See Plakas v. Drinski,* 19 F.3d 1143, 1147 (7th Cir. 1994), *cert. denied*, 513 U.S. 820, 115 S.Ct. 81, 130 L.Ed.2d 34 (1994) ("The award of summary judgment to the defense in deadly force cases may be made only with particular care where the officer defendant is the only witness left alive to testify."). This Court cannot review the credibility of the witnesses on summary judgment and, thus, there is sufficient evidence to create a triable issue regarding Esparza's use of force.

Plaintiff also alleges supervisor liability for excessive force against Acting Chief Eaves and the City of Harvey. This claim is separate from the municipal liability claim pursuant to *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690 (1978). It is well-settled that there is no *respondeat superior* or vicarious liability under § 1983. *See, e.g. Milestone v. City of Monroe, Wis.,* 665 F.3d 774, 780 (7th Cir. 2011) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). Plaintiff is therefore asserting a failure to train and supervise theory. "The Supreme Court has held that 'the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Ross v. Town of Austin, Ind.*, 343 F.3d 915, 918 (7th Cir. 2003) (quoting

*Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). Yet, there is no factual support for plaintiff's contention that Acting Chief Eaves failed to adequately train and supervise the officers on the use of force. Plaintiff is essentially relying on the fact of Eaves title of Acting Chief of the Harvey Police Department to establish liability for the officer's alleged use of force against Hill.

There likewise is insufficient record evidence to hold Eaves liable as a supervisor. Generally, for a supervisor to be personally liable for the acts of his subordinates if he "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Backes v. Vill. of Peoria Heights, Ill.,* 662 F.3d 866, 870 (7th Cir. 2011) (quoting *Chavez v. Illinois State Police,* 251 F.3d 612, 651 (7th Cir. 2001)). It is undisputed that Eaves did not learn of Hill's death until after it occurred because he was not on duty that day. Plaintiff fails to present any evidence that Eaves acted or failed to act in a constitutionally deficient way. Accordingly, this Court grants summary judgment in favor of Eaves. Since the failure to train allegation against the municipality is really a *Monell* claim, the Court will address Harvey's liability under that rubric. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989) ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a "policy" as defined by our prior cases—can a city be liable for such a failure under § 1983.").

*2. Monell Municipal Liability*

Defendants argue that the City of Harvey cannot be held liable for the use of force against Hill because plaintiff has not shown that the defendant officers are final policy makers for purposes of *Monell*. A municipality can be held liable for a constitutional injury in three ways: "(1) the enforcement of an express policy of the City, (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policy

10

making authority." *Latuszkin v. City of Chicago*, 250 F. 3d 502, 504 (7th Cir. 2001). Plaintiff is proceeding on the second means of imposing municipal liability, arguing that the Harvey's treatment of force against arrestees like Hill is subject to a "blue wall" code of silence through the under-reporting of force, inadequate record keeping, failure to train and supervise and otherwise creating an atmosphere of impunity for officers' use of force against arrestees. Defendants direct their argument not to the creation of a *de facto* policy of covering up excessive use of force by officers, but instead to the lack of a defendant with final policy making authority. Defendants' argument regarding the creation of a *de facto* policy is limited to an unsupported, undeveloped conclusion. *See* Dkt. 146, Harvey Defs. Memo. Of Law in Support of Summary Judgment at 8.

"To adequately claim that 'there is a policy at issue rather than a random event,' as required, the plaintiff might allege 'an implicit policy or a gap in expressed policies,' or 'a series of violations.'" *Listenbee v. City of Harvey*, No. 11 C 03031, 2013 WL 5567552, at *3 (N.D. Ill. Oct. 9, 2013) (Tharp, J.) (quoting *Thomas v. Cook County Sheriff's Dept.* 604 F.3d 293, 303 (7th Cir. 2010)). In *Listenbee*, the plaintiff relied on the same Department of Justice correspondence and report describing the deficient practices of the Harvey Police Department's providing of medical care and the use of force in custodial situations as the plaintiff in the instant case. Although *Listenbee* was at the pleading stage, the district court's finding that "the DOJ letter lends plausibility to Listenbee's allegations that his beating was not an isolated incident but the product of systemic shortcomings" suggests that it is also relevant here to help create a genuine issue of fact as to *Monell* liability. *Listenbee*, 2013 WL 5567552, at *4. The DOJ report combined with the medical evidence of the use of force, lack of eyewitness testimony, and plaintiff's police misconduct liability expert, Katsaris, is sufficient to create a triable issue for the jury.[4] The defendants' simple discounting of the DOJ letter

---

[4] As the Court noted already, defendants do not raise their objections to the qualification of Katsaris as an expert until their reply brief and therefore they have waived the argument for purposes of this motion.

11

and conclusory argument that there is no de facto policy on the use of force does not persuade this Court that the City of Harvey is entitled to summary judgment in its favor.

*3. Wrongful Death and Survival*

Defendants argue that plaintiff's incorporation of the factual allegations on excessive force is fatal to the state law claims of wrongful death and survival and there is simply no evidence of deliberate indifference to Hill's serious medical need. First, this Court finds that section 2–204 of the Tort Immunity Act prohibits liability against Eaves and the City of Harvey on the basis of *respondeat superior:* "a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person." 745 ILCS § 10/2–204 (2005); *see also Thomas v. Sheahan*, 499 F. Supp. 2d 1062, 1100 (N.D. Ill. 2007) (Castillo, J.). There is simply no evidence in the record to demonstrate Eaves' involvement in the constitutional deprivation alleged here.

With respect to the officer defendants there is no evidence to support an inference that they were deliberately indifferent to Hill's serious medical need. It is undisputed that Washington checked on Hill every two to three minutes and provided him with water. It is also undisputed that the defendant officers were not trained medical personnel. Paramedics were called when Hill became unresponsive. Plaintiff attempts to create a genuine issue of material fact by relying on the opinions of her police misconduct liability expert. However, Katsaris lacks adequate background and training to provide qualified testimony on the provision of medical care. Furthermore, plaintiff does not identify particular conduct attributable to each of the individual defendants beyond mere presence in the booking area to hold them liable for his death. Accordingly, this Court grants summary judgment in favor of defendants on the wrongful death and survival claims.

**Conclusion**

Based on the foregoing discussion, the Harvey defendants' motion for summary judgment [144], is denied as to Officer Esparza's use of force (Count I) and the City of Harvey (Count III) and is granted in all other respects. The other officers' motion for summary judgment [147] is granted in its entirety. Status hearing set for June 9, 2017, at 9:00 a.m.

IT IS SO ORDERED.

Date: May 23, 2017

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge